UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GREAT SCOTT NATIONAL SALES, INC., EDWARD H. SCOTT, and MARIPAT SCOTT | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | 24 C 2051 |
| CHERYL M. SCOTT, JAMES W. SCOTT, JOHN PAUL SCOTT, and HOWARD PRODUCTS, INC. | ) ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This case arises out of a dispute between family members who went into business with one another but failed to uphold an oral agreement between the parties. In 2017, Plaintiffs Great Scott National Sales, Inc. ("Great Scott"), Edward H. Scott ("Ed"), and Maripat Scott ("Maripat") (collectively, "Plaintiffs") entered a Sales Representative Agreement with Defendant James W. Scott ("Jim"), which allowed Jim to work with Defendant Howard Products, Inc. ("Howard Products") under the umbrella of Great Scott as an independent agent. At the time, the parties were aware that Jim had a deteriorating health condition that would prevent Jim from working in the near future. In addition to the Sales Representative Agreement, the parties entered an oral agreement where Plaintiffs would forego any commission on the Howard Products accounts while

Jim remained active, on the condition that the Howard Products account would be transferred to Plaintiffs once Jim's medical condition prevented him from continuing to work. However, this agreement was not honored. Instead, when Jim became incapacitated, Jim's wife, Defendant Cheryl M. Scott ("Cheryl"), and their son, Defendant John Paul Scott ("John Paul"), worked together to keep the Howard Products accounts and created a new company, the "Scott Legacy Group." Plaintiffs seek to recover the losses related to the breach of the oral agreement and filed this suit against Cheryl, Jim, John Paul, and Howard Products (collectively, "Defendants") with claims of breach of contract, promissory estoppel, breach of fiduciary duty, rescission of contract, and quantum meruit, and claims under the Illinois Sales Representative Act.

Before the Court are Defendants' respective motions to dismiss Plaintiffs' Amended Complaint. For the reasons that follow, Howard Products' motion to dismiss is denied, Cheryl's motion to dismiss is denied, and John Paul's motion to dismiss is denied as moot.

## BACKGROUND

The following facts come from the Amended Complaint and are assumed true for the purposes of this motion. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). The Court accepts as true well-pleaded facts and draws all reasonable inferences in Plaintiffs' favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

A quick review of the family dynamics here is helpful. Ed, Maripat, and Jim are

in the sales and marketing business. Ed and Maripat are married and operate Great

Scott together. Jim is Ed's brother. Jim is married to Cheryl and John Paul is the son

of Cheryl and Jim.

In 2017, Jim approached Ed and Maripat and told them that he wanted to leave

his current company but wanted to maintain his long-standing relationship with Howard

Products. Jim asked his brother and sister-in-law if he could work under Great Scott as

an independent contractor so he could keep the Howard Products accounts and show

Howard Products that he had agency support and could execute his contractual

responsibilities. The parties agreed and in June 2017, Jim and Great Scott entered a

Sales Representative Agreement where Great Scott would support Jim's work with

Howard Products in exchange for 30% of the proceeds realized from the Howard

Products agreement and other related contracts and agreements.

At the time, Jim was suffering from a medical condition that would eventually

prevent him from working. After conversations with Jim and Cheryl about Jim's

imminent financial and medical needs, the parties entered an oral contract (referred to

hereinafter as the "Scott Family Agreement") that Great Scott would forego any

commissions related to the Howard Products account so long as the accounts would be

given to Great Scott once Jim stopped working. In addition to the parties, at least five

other family members were aware of the Scott Family Agreement. Despite receiving

no form of compensation from the Howard Products account, Ed and Maripat continued

to assist Jim with that account. Cheryl was also provided training so she could step in

if Jim could not work. During this time, all of the funds realized from the Howard Products contract were paid to Jim and Cheryl, both to compensate Jim for his work on the contract (70%) and to ensure that Ed, Maripat, and Great Scott would maintain Jim's long-term interest in the accounts once Jim was unable to personally continue to work in the company.

By the Spring of 2023, Jim's medical condition prevented him from continuing to work and Cheryl began to take over Jim's interest in the Scott Family Agreement. When it became apparent that Jim's condition was rapidly deteriorating, Cheryl was approached by another Scott family member who told her she should consider retiring and releasing the Howard Products contract to Great Scott as agreed. Cheryl informed the family member that she was thinking of giving the contract to John Paul instead. Shortly after, Cheryl took steps to sever the relationship between Howard Products and Great Scott. The pair formed another company, the Scott Legacy Group, and Howard Products began to make direct payments to Cheryl.

Plaintiffs bring this suit to recover the losses incurred after the breach of the Scott Family Agreement. Plaintiffs' Amended Complaint brings claims for (1) breach of contract; (2) promissory estoppel; (3) breach of fiduciary duty; (4) recission of contract; (5) quantum meruit; and (6) relief under the Illinois Sales Representative Act. Howard Products moves to dismiss the Illinois Sales Representative Act claim against it, Cheryl moves to dismiss Counts I, III, and IV against her, and John Paul moves to dismiss Counts I and II against him.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the complaint only needs to include "sufficient facts to state a claim for relief that is plausible on its face." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (internal quotations omitted).

**DISCUSSION**

I.      **Claims against John Paul**

In response to John Paul's motion to dismiss, Plaintiffs voluntarily dismissed all standing claims against this Defendant. As such, the Court need not address the issues raised in John Paul's motion. Counts I and II against John Paul are dismissed without prejudice and John Paul's motion to dismiss is denied as moot.

II.     **ISRA Claim Against Howard Products**

The Illinois Sales Representative Act ("ISRA") provides that a sales representative must be paid all commissions owed within 13 days of the termination of their contract. *See* 820 ILCS 120/2. Specifically, ISRA provides:

> All commissions due at the time of termination of a contract between a sales representative and principal shall be paid within 13 days of termination, and commissions that become due after termination shall be paid within 13 days of the date on which such commissions become due.

Any provision in any contract between a sales representative and principal purporting to waive any of the provisions of this Act shall be void.

820 ILCS 120/2.

Howard Products argues that Plaintiffs failed to sufficiently plead it is a "principal" as defined in ISRA. However, this argument is unpersuasive. The ISRA defines the term "principal" to mean "(A) Manufactures, produces, imports, or distributes a product for sale; (B) Contracts with a sales representative to solicit orders for the product; and (C) Compensates the sales representative, in whole or in part, by commission." 820 ILCS 120/1(3). However, Plaintiffs need not specifically plead what Howard Products' products are or how they are made, produced, or transported to successfully plead an ISRA claim. *See Brown v. Meisner*, 81 F.4th 706, 708 (7th Cir. 2023) ("Specific facts are not necessary under Rule 8 because the plaintiff need only give the defendant fair notice of what the claim is and the grounds upon which it rests.") (cleaned up).

The Amended Complaint explicitly pleads that "Howard Products paid Great Scott a monthly commission for the work done by Jim, Maripat, and Ed," Dkt. # 35, ¶ 25, and that Jim, who worked in sales and marketing, had a long-term professional relationship with Howard Products that he wanted to continue under the umbrella of Great Scott. Jim went to trade shows on behalf of Howard Products which included booth sales. Ed and Maripat also helped set up "vendor portals, and all related vendor portal maintenance, including product descriptions, packs, images, and on-line selling

details." *Id.* at ¶ 30. These allegations allow for the reasonable inference that Howard Products is in the business of selling a tangible product and is therefore a "principal" as defined by ISRA.

Likewise, Plaintiffs' role as a sales representative is also properly pled. The Act defines "sales representative" as "a person who contracts with a principal to solicit orders and who is compensated, in whole or in part, by commission." 820 ILCS 120/1(4). The term "person" includes corporate entities. *See M.S. Kind Assocs., Inc. v. Mark Evan Prods., Inc.*, 222 Ill. App. 3d 448, 450 (1st Dist. 1991).

This issue boils down to whether Plaintiffs plausibly pled the existence of a contract between them and Howard Products. We find that a contract between Great Scott and Howard Products can be inferred from the factual allegations in the Amended Complaint. The Amended Complaint alleges that Jim, Maripat, and Ed, who were agents of Great Scott, negotiated an agreement "between them and Howard Products." Dkt. # 35, ¶ 26. The Amended Complaint also alleges that Howard Products paid a monthly commission to Great Scott for the work done by Plaintiffs and Jim. *Id.* ¶ 25. The Amended Complaint also makes numerous factual allegations detailing the work Ed and Maripat did on the Howard Product accounts, including the "preparation and execution of appropriate forms, insurance, vendor portal submissions, booth set-up, and booth sales." *Id.* ¶ 30. As pled, the engagement between Plaintiffs and Howard Product shows a relationship akin to that of a "principal" and "sales representative" as defined

in ISRA and makes it plausible that a contract existed between these two parties. Howard Products' motion to dismiss Count VI is denied.

### III. Claims against Cheryl

#### a. Count I: Breach of Contract

"In order to state a cause of action for breach of contract, a plaintiff must plead: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) a breach of the subject contract by the defendant; and (4) that the defendant's breach resulted in damages." *McCleary v. Wells Fargo Sec., L.L.C.*, 2015 IL App (1st) 141287, ¶ 19.

Although the Amended Complaint does not directly state that Cheryl was a party to the contract between Jim and Great Scott, it can be reasonably inferred from the allegations. For instance, the Amended Complaint alleges that the oral contract "required that Jim and Cheri cooperate with Ed and Maripat to ensure that the Howard Products' line, and all of the related accounts, would be transferred to Great Scott once Jim's medical condition had so advanced that he was no longer able to handle those accounts himself." Dkt. # 35 ¶ 55.

"The elements of a valid and enforceable contract are offer, acceptance, and consideration." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 522 (7th Cir. 2022) (internal quotations omitted). "Relatedly, there can only be a binding offer and acceptance when the parties mutually assent to definite and certain terms." *Id*. Illinois law also recognizes implied-in-fact contracts. "An implied-in-fact

contract is founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred ... from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *In Matter of Compl. of Ingram Barge Co.*, 194 F. Supp. 3d 766, 803 (N.D. Ill. 2016) (internal citations omitted). The elements of an implied-in-fact contract are the same as an express contract. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 883 (7th Cir. 2022). "The only difference between an express contract and an implied contract in the proper sense is that, in the former, the parties arrive at an agreement by words, either verbal or written, while in the latter, the agreement is arrived at by a consideration of their acts and conduct." *iMotorsports, Inc. v. Vanderhall Motor Works, Inc.*, 2022 IL App (2d) 210785, ¶ 32.

The terms of the Scott Family Agreement are clear. Jim was responsible for handling the Howard Products accounts until his medical condition prevented him from working. Afterwards, the accounts would be given to Great Scott.

Plaintiffs allege that they trained Cheryl in hardware channel verbiage so she could reply to correspondence from Howard Products. After Jim's health deteriorated in the Spring of 2023, Cheryl was responsible for handling all communications on Jim's behalf and to "look out for Jim's interest in the Scott Family Agreement." Dkt. # 35 ¶ 38-39. The Amended Complaint also alleges that when Cheryl was approached by another family member who told her that she should consider "retiring" and releasing the Howard Products account back to Ed and Maripat, her response was, "no, I'm thinking about giving it to the kid." *Id.* ¶¶ 44–45. Two things can be inferred from this

exchange: (1) Cheryl was performing some obligations pursuant to the Scott Family Agreement to the extent that a family member was pushing her to "retire," and (2) Cheryl was aware of the agreement and wanted to renege on the terms and give it to her son instead.

The "plausibility" pleading standard does not require detailed factual allegations, *U.S. Sec. and Exch. Comm'n v. Winemaster*, 529 F. Supp. 3d 880, 905 (N.D. Ill. 2021), but rather "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014). These allegations, considered as a whole, make it plausible that Cheryl was a party to the contract and that she breached the contract when she refused to transfer the Howard Products accounts to Great Scott as agreed. Plaintiffs' breach of contract claim stands.

b. Count IV: Rescission

Plaintiffs also bring a rescission claim against Cheryl. "Generally, rescission means the cancelling of a contract so as to restore the parties to their initial status." *Horwitz v. Sonnenschein Nath & Rosenthal LLP*, 399 Ill. App. 3d 965, 973 (1st Dist. 2010). The elements of a rescission claim are: "(1) substantial nonperformance or breach by the defendant; and (2) that the parties can be restored to the status quo ante." *Mandel Metals, Inc. v. Walker Grp. Holdings*, 2015 WL 3962005, at *5 (N.D. Ill. 2015).

Cheryl argues that Plaintiffs' rescission claim fails because they cannot show a contract between her and Plaintiffs. As stated above, the Amended Complaint

sufficiently pleads the existence of a contract between Plaintiffs and Cheryl. The oral contract was a family contract between the parties and Cheryl was one of the family members that performed in accordance with the contract. In regards to the second element, the Amended Complaint asks the Court to rescind the Scott Family Agreement and order that the money Great Scott paid Cheryl and Jim be returned. This would return the parties to the *status quo ante*. The Court agrees. Plaintiffs' recission claim stands.

      c.  Count III: Breach of Fiduciary Duty

The Amended Complaint also brings a breach of fiduciary duty claim against Cheryl. To allege a breach of fiduciary claim, Plaintiffs must allege: "(1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) the breach proximately caused the injury of which the plaintiff complains." *Ball v. Kotter*, 723 F.3d 813, 826 (7th Cir. 2013) (citing *Neade v. Portes*, 193 Ill.2d 433, 250 (2000)). The law recognizes a fiduciary duty in certain relationships, such as attorney-client or principal-agent relationships. *Miller v. Harris*, 2013 IL App (2d) 120512, ¶ 21. Here, the Amended Complaint makes sufficient allegations to find that Cheryl owed a fiduciary duty to Plaintiff.

The Amended Complaint generally states that Cheryl was "a member of the venture," Dkt. # 35 ¶ 64, which suggests that Plaintiffs' breach of fiduciary duty claim is predicated on a joint venture between the parties. If that is the case, then to successfully plead the existence of a joint venture, Plaintiffs must allege sufficient facts

showing: "(1) an express or implied agreement to carry on an enterprise; (2) a demonstration of intent to be joint venturers; (3) a community of interest, as reflected in the contribution of property, money, effort, skill, or knowledge; (4) a measure of joint control and management of the enterprise; and (5) sharing of profits and losses." *Hiatt v. W. Plastics, Inc.*, 2014 IL App (2d) 140178, ¶ 73. "A formal agreement is not essential to establish a joint venture, and its existence may be inferred from the facts and circumstances demonstrating that the parties in fact entered into a joint venture." *Andrews v. Marriott Int'l, Inc.*, 2016 IL App (1st) 122731, ¶ 23.

Cheryl received money from services rendered to Howard Products through Great Scott. Cheryl performed these services pursuant to the Scott family oral contract. The community of interest here is the Howard Products account and the Amended Complaint makes sufficient allegations to show that both parties shared control and management of the account and that there was a sharing of profits. As such, Plaintiffs' breach of fiduciary duty claim survives.

## **CONCLUSION**

For the reasons stated above, Howard Products' motion to dismiss Count VI [38] is denied. Cheryl Scott's motion to dismiss [39] is denied. All claims against John Paul Scott are dismissed, and his motion to dismiss [40] is denied as moot. A telephonic status hearing is scheduled on 6/24/2025 at 10:05. For the telephonic status hearing, parties are to use the following call-in number: 1-650-479-3207, access code 2300 000 6287 or with the following link https://us-courts.webex.com/meet/Judge_Kocorasilnd.uscourts.gov. When using the link, Counsel must type in their name when joining the call. Throughout the call, each speaker will be expected to identify themselves for the record before speaking.

It is so ordered.


Dated: 5/28/2025                                        Charles P. Kocoras

                                                       Charles P. Kocoras
                                                       United States District Judge

13